ALONZO W. LAWRENCE, MARY DISAVINO, THE RAHWAY TAX-
PAYERS ASSOCIATION, PLAINTIFFS-RESPONDENTS, v.
ROBERT W. SCHROF, THE RAHWAY CITY CLERK, AND MU-
NICIPAL COUNCIL OF THE CITY OF RAHWAY, DEFEND-
ANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued May 28, 1980—Decided July 7, 1980.

Before Judges CRANE, MILMED and KING.

*Alan J. Karcher,* Director of Law, City of Rahway, argued the cause for appellants.

*Paul R. Williams, Jr.,* argued the cause for respondents (*Williams & Flynn,* attorneys).

*Barbara A. Harned,* Deputy Atty. Gen., argued the cause on behalf of the Attorney General *amicus curiae* (*John J. Degnan,* Atty. Gen., attorney).

*LeBoeuf, Lamb, Leiby & MacRae,* New York City, New York bond counsel for appellant City of Rahway, filed a brief *amicus curiae.*

The opinion of the court was delivered by

CRANE, P. J. A. D.

Defendants appeal from a final judgment of the Law Division in an action in lieu of prerogative writs.[1] The judgment under review declared that certain petitions for a referendum filed by plaintiffs with the city clerk were proper and legal within the meaning of *N.J.S.A.* 40:69A–185 *et seq.* The judgment suspended the operation of an ordinance passed by the governing body of the City of Rahway on December 11, 1978 until a referendum is held in accordance with *N.J.S.A.* 40:69A–189. The ordinance in question appropriated $1,550,000 for a new city hall and police headquarters in addition to $3,000,000 previously appropriated. The judgment also directed that the city clerk submit the ordinance to the municipal council in accordance with *N.J.S.A.* 40:69A–190, and in the event the council fails to repeal the ordinance, the city clerk is directed to submit the ordinance to the voters in accordance with *N.J.S.A.* 40:69A–191. The order further enjoined the city from implementing the ordinance or expending any funds pursuant to the ordinance.

Initially, we note that it is undisputed that the petition as originally presented to the city clerk contained 2,093 signatures. That number was far short of 25% of the registered voters required by *N.J.S.A.* 40:69A–185. If the petition had contained, on its face, a sufficient number of signatures but was rejected by the clerk after a finding that a number of the signatures were invalid, we have no doubt that petitioners would have been entitled to file a supplementary petition within ten days after receiving notice of the deficiency. *N.J.S.A.* 40:69A–188. *See, also, Citizens for Charter Change, Essex Cty. v. Caputo,* 136 *N.J.Super.* 424, 430–431 (App.Div.1975), certif. den. 74 *N.J.* 268, 269 (1975). Defendants contend that a petition which is insufficient as to the number of names as originally filed need not be received by the clerk and may not subsequently be supplemented. We need not determine that question since we have con-

---

[1]Other issues not involved in this appeal were dealt with in an opinion of the trial judge previously published. *Lawrence v. Schrof,* 162 *N.J.Super.* 375 (Law Div. 1978).

cluded that the trial judge erred in his interpretation of the phrase "registered voters" as it appears in *N.J.S.A.* 40:69A–185 which requires a reversal.

As indicated in his opinions of September 25, 1979 and January 28, 1980, the trial judge found that the petition as supplemented contained 3,656 valid signatures, that the total number of persons registered to vote in Rahway was 14,037 and that the number of those registered to vote but who had never voted was 907. He concluded as a matter of law that the term "registered voters" as used in *N.J.S.A.* 40:69A–185 applies only to those who are registered to vote and who have actually voted. He specifically held that the term does "not apply to those who are registered but have not voted." Accordingly, he concluded that the number of signatures on the petition satisfied the 25% requirement of *N.J.S.A.* 40:69A–185.

That conclusion was based on his findings that the total number of registered voters as of October 10, 1978 was 14,037, from which he subtracted 907 who had never voted and 43 additional ineligibles, leaving a total of 13,087 registered voters who had actually voted. He calculated 25% of that number at 3,272. He found from the evidence that the total number of signatures on the petitions was 3,656, from which he deducted 229 signatures of persons who were not registered to vote and 148 who were eligible to vote but who had never voted, leaving 3,279 signatures which he found to be 7 more than the minimum of 3,272 required.

The basis for the conclusion of the trial judge that the term "registered voters" as it appears in *N.J.S.A.* 40:69A–185 does not include persons who are registered but who have not voted was his analysis of the legislative history of the enactment. He found that the original draft of the bill provided for petitions to be signed by "qualified electors" but that when the bill finally became law the term "qualified electors" had been eliminated and replaced by the term "registered voters." He concluded that the legislative intent was to use a term not as broad as elector.

Legislative history may be helpful in construing legislative intent. *Brewer v. Porch*, 53 *N.J.* 167, 174 (1969); *Key Agency v. Continental Cas. Co.*, 31 *N.J.* 98, 103 (1959). Nevertheless, the words and phrases of statutes are to be given their generally accepted meaning unless the meaning is inconsistent with the intent of the Legislature. *N.J.S.A.* 1:1–1; *Safeway Trails v. Furman*, 41 *N.J.* 467, 477, 482 (1964). With particular regard to election statutes, they are to be construed liberally in favor of enfranchisement. *In re Ross Petition*, 116 *N.J.Super.* 178, 184 (App.Div.1971); *D'Ascensio v. Benjamin*, 137 *N.J.Super.* 155, 163 (Ch.Div.1975), aff'd 142 *N.J.Super.* 52 (App.Div.1976). They are not to be construed so as to deprive voters of their franchise. *Kilmurray v. Gilfert*, 10 *N.J.* 435, 440 (1952); *In re Atlantic County Bd. of Elections*, 117 *N.J.Super.* 244, 250 (App. Div.1971). The effect of the construction placed upon the statute does exactly that. It prohibits persons who are qualified to vote from exercising the right to petition for a change of local law. We cannot accept a construction which brings about such an unusual and seemingly unreasonable result. *See Citizens for Charter Change, Essex Cty. v. Caputo*, 151 *N.J.Super.* 286, 290 (App.Div.1975), certif. den. 74 *N.J.* 268, 269 (1975); *Johnson v. Reichenstein*, 50 *N.J.Super.* 116, 121–122 (App.Div. 1958). We conclude, therefore, that the trial judge erred in excluding from his computations those persons who were validly registered to vote but who had not voted.

Accepting as correct the figures used by the trial judge in making his calculations, it appears that a total of 3,427 valid signatures was contained in the petitions. This number is to be compared with the total number of registered voters which he found to be 13,994; 25% of 13,994 is 3,498, which indicates that the number of signatures submitted on the petitions, namely 3,427, was an insufficient number as required by *N.J.S.A.* 40:69A–185.

In the light of the conclusion we have reached, it is not necessary for us to consider the remaining issues raised by the defendants and *amici curiae*.

The judgment under review is reversed.