613 A.2d 61

John VOLTERANO, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD
(ALLIED CORPORATION AND TRAVELERS
INSURANCE COMPANY), Respondents.

Commonwealth Court of Pennsylvania.

Argued March 2, 1992.

Decided July 13, 1992.

Reargument Denied Sept. 11, 1992.

Robert J. Murphy, for petitioner.

John B. Alessandroni, for respondents.

Before DOYLE and FRIEDMAN, JJ., and LEDERER, Senior Judge.

DOYLE, Judge.

This is an appeal by John Volterano (Claimant) from an order of the Workmen's Compensation Appeal Board (Board) which reversed a referee's grant of benefits to him but upheld the referee's decision to deny him penalties and attorney fees.

The following facts are pertinent. Claimant had been employed for forty years by Allied Corp. (Employer) as a millwright and tool room attendant. In the course of his duties Claimant was frequently exposed to asbestos. On August 20, 1984 Claimant injured his shoulder allegedly while climbing a ladder at work. He sustained a torn rotator cuff and an arthrogram was performed on December 11, 1984, in anticipation of surgery. The arthrogram report *erroneously* revealed that Claimant had advanced interstitial lung disease. Claimant then sought medical attention for the lung condition. Despite the fact that Claimant was advised that the arthrogram report was in error, he continued to believe that he suffered from severe lung problems, specifically asbestosis. Claimant's fear that he had asbestosis and his concern that he would die from it rendered him, according to one of his doctors, an emotional cripple.

Because of the importance of the interplay between Claimant's lung problems and his emotional state of mind it is helpful to explain the lung problems in detail. Dr. Cantagallo, one of Claimant's treating physicians, heard bilateral rhonchi in Claimant's lungs during a January 16, 1985 examination. In a subsequent examination he began to note increasing signs of anxiety being manifested by Claimant as well as dyspnea on exertion and shortness of breath. He concluded the Claimant was " 'an emotional cripple' from asbestos exposure 'not as clinically significant' as Volterano believes...."[1] Dr. Cantagallo opined that Claimant was totally disabled as a result of his belief that he has severe pulmonary disease.

Dr. Sokas, Claimant's consulting physician, examined Claimant on April 10, 1985 and remarked that he appeared plethoric and anxious. Her examination of Claimant's lungs revealed

---

1. Referee's finding of fact No. 7.

"fine crackles at the right base." Radiographic films of Claimant's chest revealed "significant bilateral pleural thickening and calcification with 'very minimal, if any' signs of interstitial fibrosis."[2] She opined that Claimant had become "fixed" on the erroneous arthrogram and that his resulting anxiety precluded him from returning to his prior duties. Dr. Sokas's deposition, pp. 18–19, 26–27.

Dr. Schwartz, who testified on behalf of Employer, and who did not examine Claimant, opined that Claimant has " 'asbestos-related pleural disease' but does not have asbestosis."[3] He noted that although Claimant has pleural thickening and pleural plaques caused by exposure to asbestos, the asbestos-related pleural disease would not impose any functional limitations on Claimant or require any specific treatment.

The referee specifically found persuasive and credible the testimony of Drs. Cantagallo and Sokas and Claimant. He also relied in his adjudication upon the portion of Dr. Schwartz's testimony where that doctor conceded that Claimant has bilateral pleural plaque thickening with minimal interstitial disease caused by exposure to asbestos. He therefore determined that "Claimant experienced a severe emotional reaction as a result of a physical injury to the pleura of his lungs ... precluding his ability to perform his work duties beginning January 12, 1985"[4] and awarded benefits.

Also significant for our purposes, the referee rejected Claimant's claim (appearing in a separate claim petition which was consolidated with the one at issue here) that he sustained a work-related shoulder injury. That conclusion is not challenged on appeal.

Finally, the referee declined to assess counsel fees and penalties. Cross appeals to the Board followed. Employer asserted that the grant of benefits was improper, and Claimant appealed the referee's denial of attorney fees and penalties. The Board reversed the referee on the question of

2. Referee's finding of fact No. 8.
3. Referee's finding of fact No. 10.
4. Referee's finding of fact No. 12.

disability holding that an improper burden of proof had been employed by the referee. It reasoned that because no physician testified that Claimant was physically disabled from any work-related injury or trauma, Claimant's case is one actually involving a mental cause and a mental disability. It thus held that Claimant was obliged to meet the more strict burden of proof our case law requires for the legally coined category, "mental-mental" cases. Claimant has now appealed the Board's determination to this Court.

On appeal we are asked to decide whether this case does in fact fit within the mental-mental category. Further, Claimant again challenges the denial of attorney fees and penalties and also argues, in the alternative, that should we determine that he must meet the higher burden we impose in mental-mental cases, we remand for further hearings.

■■ We shall consider these issues seriatim keeping in mind that our scope of review is limited to determining whether the necessary findings are supported by substantial evidence and whether there has been a constitutional violation or a legal error committed. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

Initially, we believe it is helpful to set forth the two possible burdens of proof which may apply to Claimant's case. As the Board correctly observed in its opinion:

Disabilities caused by psychological/mental elements may be considered to be injuries under the Act and, therefore, compensable if the other elements needed to establish a claim are met. The influence of the psychological or mental element breaks down in three discrete areas: (1) psychological stimulus causing physical injury, the mental/physical association; (2) physical stimulus causing psychic injury, the physical/mental association; (3) psychological stimulus causing psychic injury, the mental/mental association.

Board op. at 6–7.

■■ An example of the first category is where a claimant, because of unusual pressure at his office, has a heart attack. In such a situation the claimant, in order to recover benefits,

must show only that his injury (the heart attack) arose in the course of employment and was related thereto. *See, e.g., Krawchuk v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981).

■ An example of the third category is where a claimant, because of work stress, claims a mental collapse. *See, e.g., Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa. Commonwealth Ct. 128, 481 A.2d 374 (1984). In such a situation the claimant must demonstrate either that actual extraordinary events at work which can be pinpointed in time caused the trauma or that abnormal working conditions over a longer period of time caused the psychic injury. *Marsico v. Workmen's Compensation Appeal Board, (Department of Revenue)*, 138 Pa. Commonwealth Ct. 352, 588 A.2d 984 (1991). The reason for this heightened burden of proof is that psychic injuries are by nature subjective. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 519, 568 A.2d 159, 164–65 (1990) (quoting from and adopting the reasoning of *Russella v. Workmen's Compensation Appeal Board (National Foam Systems Inc.)*, 91 Pa. Commonwealth Ct. 471, 475–76, 497 A.2d 290, 292 (1985), *petition for allowance of appeal denied,* 516 Pa. 637, 533 A.2d 95 (1987)).

As to the second category, our research has found no case presenting such a fact pattern;[5] thus, the question of what burden a claimant has in such a situation has never been decided.

■ While at first blush this case might appear to present such a situation, that is not in fact so. If the basis for Claimant's mental breakdown were his concern over the work-related pleural thickening, the second scenario mentioned above would be present. But we must emphasize that while the referee arguably found in his finding No. 12, that it was

5. Claimant cites four cases as examples of a physical injury causing a mental disability. Three of them are termination cases and, thus, the burden a claimant needed to meet to sustain his claim petition was never an issue before us. The fourth case involved specific loss benefits for hysterical blindness where there was no physical injury to the eye. Specific loss cases, however, have their own burden of proof which is not relevant here.

Claimant's concern over the work-related pleural thickening which caused his breakdown, that finding is not supported by substantial evidence because the chronology of events demonstrates that Claimant became mentally disabled when he saw the erroneous report indicating he had advanced interstitial lung disease. It was that report which caused him to believe he had asbestosis and triggered the breakdown; not his later awareness that he had pleural thickening in his lungs. This is evident because he saw the report at the earliest on December 11, 1984. It stated, in pertinent part, "Of incidental interest is the presence of considerable interstitial disease throughout the lungs, there is linear calcification which appears to be situated along the left side of the pericardium." Claimant's claim petition, which was never amended and which does not even allege a mental disability at all, alleged that his lung injury occurred on January 11, 1985. He did not see Dr. Cantagallo until January 16, 1985 and Dr. Sokas until April 10, 1985 and, there is not one iota of evidence that Claimant even knew of any pleural thickening of his lungs before January 16, 1985 at the earliest; hence, it could not have been the basis for his mental problem.

■ We are thus presented with the question of whether in the absence of proof of a work-related physical injury of which the claimant is aware,[6] a claimant can recover workmen's compensation benefits for a mental injury caused solely by a misdiagnosis.

We have held that injuries unrelated to a claimant's job are compensable if they are the proximate or natural and probable result of a *prior work-related injury. GTE Sylvania v. Workmen's Compensation Appeal Board (Lydon)*, 73 Pa. Commonwealth Ct. 618, 458 A.2d 1050 (1983). A claimant in such a situation must prove that the resultant disability was so immediately connected with the prior work-related injury that it would naturally and probably result from it. *Id.* Assuming

6. We recognize that Claimant's misdiagnosis occurred during the course of treatment for the shoulder injury which he claimed was work-related. He did not, however, prove his shoulder injury was work-related and the referee found that it was not.

without deciding that a misdiagnosis could constitute a compensable injury under the *GTE* rule, it cannot constitute a compensable injury in this case for the reason that there is no prior work-related injury which it can append itself to in order to establish the requisite causation even under the *Krawchuk* burden.[7] As previously explained, Claimant's shoulder injury, which he alleged was work-related, was found not to have been so. Claimant's pleural thickening, which was found to have been work-related, was (1) unknown to Claimant at the time of his viewing the erroneous report and (2) not the basis for having the arthrogram. Thus, we hold on these facts that recovery is not possible. Our holding, however, is a narrow one. We leave open the question of whether a misdiagnosis rendered in connection with what itself is a non-disabling but work-related injury could be the basis for an award of benefits. We do note, however, in passing, that in Pennsylvania tort law the individual who initially injured the plaintiff generally bears responsibility for subsequent medical errors of this sort. *See, e.g., Embrey v. Borough of West Mifflin,* 257 Pa. Superior Ct. 168, 390 A.2d 765 (1978) (quoting Restatement (Second) of Torts § 457 (1965)):

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third parties in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner.

*See also, Nathan v. McGinley,* 342 Pa. 12, 19 A.2d 917 (1941).

We now consider the issue of attorney fees and penalties. The general rule is that in a contested case the worker's compensation claimant is entitled to attorney fees unless there was a reasonable basis for the contest. *Harmar*

---

**7.** We do not decide whether the *Krawchuk* burden would, in fact, apply in this type of situation as we do not reach that issue. We merely state that even under this lower burden Claimant cannot prevail. We also leave open the issue of whether a subsequent mental injury must append itself to an underlying work-related *compensable* injury, that is, a work-related minor injury where no benefits are awarded and no medical costs are incurred.

*Coal Co. v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 98, 381 A.2d 215 (1977). Whether there exists a reasonable basis for the contest is a question of law. *Id.* We hold that in this case since Employer has prevailed the contest was per se reasonable and, thus, the referee properly declined to award such fees. With regard to the issue of penalty fees, the referee found that Claimant had failed to file a separate penalty petition and, accordingly, his request for penalties could not be considered. Thus, the referee committed no error.

Finally, we observe that because of our disposition of this case Claimant's alternative request for a remand for additional hearings under the heightened burden employed in mental/mental cases would be of no avail.

Affirmed.

## ORDER

NOW, July 13, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.